**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Destiny Springs Healthcare LLC, | No. CV-23-01694-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Physicians IPA Incorporated, | |
| Defendant. | |

Plaintiff Destiny Springs Healthcare LLC ("Plaintiff") has filed a Motion to Remand this case to state court, where it was originally filed. (Doc. 13). Defendant Arizona Physicians IPA Incorporated ("Defendant") has filed a Response and Plaintiff has filed a Reply. (Docs. 14; 15, respectively). For the reasons set forth below, the Court grants Plaintiff's Motion to Remand.

## I. Background

Plaintiff, an inpatient psychiatric facility, initially sued Defendant, a "Medicare Advantage Organization" ("MAO") in Maricopa County Superior Court for allegedly underpaying "hundreds" of claims. (Doc. 1-3 at 1). Plaintiff filed claims arising under Arizona state law for (1) unjust enrichment, (2) quantum meruit, (3) breach of implied in-law contract, and (4) breach of the implied covenant of good faith and fair dealing. (*Id*. at ¶¶ 37–56). After Plaintiff sued Defendant in state court, Defendant removed this case to federal court based on the federal officer removal statute: 28 U.S.C. §§ 1442(a)(1). (Doc. 1 at 2).

1   In its Notice of Removal, Defendant states that Plaintiff's allegations challenge
2   actions that it takes that are required by the Centers for Medicare & Medicaid Services
3   ("CMS"), a federal agency that oversees MAOs.  (Doc. 1 at ¶ 1).  Defendant also states
4   that it assists CMS, the alleged federal officer, in administering Medicare benefits and that,
5   if it were not for MAOs like Defendant, "CMS would have to perform these tasks on its
6   own as it did prior to the adoption of the Medicare Advantage program, and as CMS still
7   does for individuals enrolled in Original Medicare."  (*Id*. at ¶ 25).

8   Plaintiff explains in its Motion that Medicare consists of four main sections: Part A
9   covers inpatient hospital services, Part B covers outpatient services, Part C establishes the
10  Medicare Advantage ("MA") program, and Part D provides prescription drug coverage.
11  (Doc. 13 at 2–3).  Under the MA program established by Medicare Part C, the section that
12  is relevant to this matter, "qualified beneficiaries" have the option to choose a private health
13  insurance plan administered by an MAO.  (Doc. 13 at 3).  MAOs contract with CMS to
14  provide MA plans to qualified beneficiaries and the providers are paid an amount
15  determined by the contract with each MAO.  (*Id*. at 4).  The Contract and CMS regulations
16  "provide the rules and considerations an MAO must follow in determining whether to allow
17  benefits." 42 C.F.R. §§ 422.503; 422.504.

18  Plaintiff states that it is a "non-contract" provider for Defendant's MA plans and
19  that it provided services for Defendant's enrollees. (Doc. 1-3 at ¶¶ 27–28).  Plaintiff alleges
20  that Defendant approved these services but only paid a portion of them and kept the rest—
21  contrary to federal law.  (*Id*. at ¶¶ 30–36).  Plaintiff states that MAOs are required to pay
22  non-contract providers an amount "equal to at least the total dollar amount of payments for
23  such items and services as would otherwise be authorized under parts A and B" of the
24  Medicare program.  (*Id*. at ¶ 13 (citing 42 U.S.C. § 1395w-22(a)(2)(A)(i)-(ii)).  Plaintiff
25  also states that non-contract providers are "required by law to accept those amounts as
26  payment in full and are prohibited from pursuing any remaining balance from the
27  patient/enrollee."  (*Id*. at ¶ 14).  Plaintiff alleges that Defendant underpaid its claims by
28  "hundreds of thousands of dollars over the course of several years."  (*Id*. at 34).

## II.    Legal Standards

A defendant may remove an action originally filed in state court to federal court under 28 U.S.C. § 1441(a) if any claim could have originally been brought in federal court. *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686–87 (9th Cir. 2007).  Defendant removed this case to this Court under the "federal officer removal statute," which differs from removal based on federal question or diversity jurisdiction.  *See Escarcega v. Verdugo Vista Operating Co., LP*, 2020 WL 1703181, at *3 (C.D. Cal. Apr. 8, 2020).  Normally, Section 1441 removal is to be strictly construed against removal.  *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).  However, "the Supreme Court has mandated a generous interpretation of the federal officer removal statute." *Id.* (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).  In fact, "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the *defense* depends on federal law." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (emphasis added).  This differs from the traditional "well-pleaded complaint" rule.  *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (noting that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.") (citation omitted).

The federal officer removal statute provides that federal officers and their agents may remove a case initially filed in state court based on acts performed under color of their federal office if they assert a colorable federal defense.  *See* 28 U.S.C. § 1442(a)(1).[1]  The Ninth Circuit has identified several factors that are relevant to assessing whether a private person is acting pursuant to a federal officer's directions, including whether the person: (1)

---

[1] Section 1442 states, in pertinent part, that "(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."

"is acting on behalf of the officer in a manner akin to an agency relationship;" (2) "is subject to the officer's close direction;" (3) "is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm;" and (4) is engaged in "activity [that] is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances." *Quinto v. Regents of Univ. of California*, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1, 2023) (citing *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 756-57 (9th Cir. 2022) (internal quotations and citations omitted)).

A party seeking removal under Section 1442[2] "must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1252 (citing *Jefferson County*, 527 U.S. at 431). However, the Supreme Court has cautioned that Section 1442's broad language "is not limitless." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). As the proponent of the Court's jurisdiction, the removing defendant bears the burden of establishing that removal jurisdiction exists by a preponderance of the evidence. *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014); *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

A plaintiff's motion to remand operates much like a defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1): it must allege facts, not mere legal conclusions, in compliance with the pleading standards established by *Bell Atlantic*

---

[2] Section 1442 is intended to protect federal officers from interference with their official duties through state-court litigation. *Quinto*, 2023 WL 1448050, at *2 (citing *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981)). This removal statute "responds to three general concerns: (1) State-court proceedings may reflect local prejudice against unpopular federal laws or federal officials; (2) States hostile to the Federal Government may impede federal law; and (3) States may deprive federal officials of a federal forum in which to assert federal immunity defenses." *Valladolid v. Mem'l Health Servs.*, 2023 WL 4236179, at *3 (C.D. Cal. June 27, 2023) (citations omitted).

*Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Leite*, 749 F.3d at 1121.   Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways: a facial or factual attack. *See id*. "A 'facial' attack accepts the truth of the [non-movants] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.' *Id*. (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id*. (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).   "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id*. (citing *Safe Air for Everyone*, 373 F.3d at 1039).

## III.   Discussion

Plaintiff argues that removal based on Section 1442 was improper because (1) no causal nexus exists between Defendant's actions and CMS's directions, and (2) Defendant has no colorable federal defense.  (Doc. 13 at 5, 14).  Of note, Plaintiff does not dispute that Defendant is a "person" under Section 1442.  (*See id*. at 1).  The Court will address each of these arguments for remand in turn.

### A.   Causal Nexus

Plaintiff first argues that removal was inappropriate because no causal nexus exists between Defendant's actions and CMS's directions in administering Medicare benefits. (Doc. 13 at 5).  Defendant disagrees.  (Doc. 14 at 7).

A party seeking removal under Section 1442 must demonstrate that there is a causal nexus between its actions taken pursuant to a federal officer's directions.  *See Durham*, 445 F.3d at 1251.  The "causal nexus" element of federal officer removal includes two sub-components: "(1) that [the defendant's] actions . . . are 'actions under' a federal officer and (2) that those actions are causally connected to the dispute" in question.  *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

### 1. "Actions Under" a Federal Officer

The issue here is whether Defendant acts under CMS when it pays, or underpays, claims on behalf of Medicare beneficiaries.

"For a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Goncalves,* 865 F.3d at 1245 (quoting *Watson*, 551 U.S. at 152). However, this involvement "does not include simply complying with the law, even if the regulation is highly detailed [or] the private firm's activities are highly supervised and monitored." *Watson*, 551 U.S. at 152–53. This is so because when a company complies with a regulatory order, "it does not ordinarily create a significant risk of state-court 'prejudice.'" *Id*. (citations omitted). However, government contractors may come within the terms of the statute if "[t]he assistance [they] provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Id*. at 153. One factor courts consider in this analysis is whether the defendant was "perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would [h]ave had to perform." *Id*. at 154. The "relationship typically involves subjection, guidance, or control, but it must go beyond simply complying with the law, even if the laws are 'highly detailed' and thus leave the entity 'highly regulated.'" *Goncalves*, 865 F.3d at 1245.

Defendant argues here that it was acting under the direction of CMS "while administering Plaintiff's MA Plan." (Doc. 14 at 7). Defendant also argues that, "under similar circumstances, the Ninth Circuit has held that private insurers who assist the federal government in the administration of a [federal] health insurance program (here, Medicare Part C) are 'acting under' a federal officer." (*Id*. at 7–8 (citing *Goncalves*, 865 F.3d at 1248)). Plaintiff argues that *Goncalves* is not similar to this case because it involved the administration of a Federal Employee Health Benefit Act ("FEHBA") plan, not an MA plan like the one at issue here. (Doc. 15 at 4).

*Goncalves v. Rady Children's Hosp. San Diego* is instructive here, but dictates

remand, rather than removal.  In *Goncalves*, the Ninth Circuit considered whether insurance carriers that administered a FEHBA plan on behalf of the U.S. Office of Personnel Management ("OPM") "acted under" a federal officer in filing a subrogation[3] lien on the potential settlement proceeds from a state court suit to recover benefits paid by the carriers under the FEHBA plan.  *Id*. at 1242–43, 1245.  The Ninth Circuit discussed the relationship between OPM and FEHBA carriers and noted that the contracts that OPM negotiates with private carriers provide for subrogation, i.e., OPM *obligates* carriers "to make a reasonable effort to pursue subrogation claims."  *See id*. at 1247 (internal quotation marks omitted). The court concluded, "[i]n light of the interconnectedness between OPM and the [FEHBA carriers], the [carriers'] obligation to pursue subrogation claims, and the vital federal interest in the pursuit of subrogation claims, we hold that the [FEHBA carriers] 'act under' a federal officer when they pursue subrogation claims."  *Id*.

*Goncalves* is not directly on point, as Plaintiff notes, as it involved the administration of a FEHBA plan, and this case does not.  *See Goncalves*, 865 F.3d at 1245. However, other district courts within this district have relied on *Goncalves* to conclude that removing defendants must "explain precisely how their contract with CMS or the statutory and regulatory framework bear on their coverage decisions."  *Vaccarino v. Aetna, Inc*., 2018 WL 6249707, at *5 (C.D. Cal. Nov. 29, 2018).  Indeed, the Court "must consider the degree of CMS's control over and the federal government's interest in *coverage decisions* specifically, not administration of MA plans generally."  *Id*. at *6.

Defendant does not explain the nature of CMS's control over coverage decisions or elaborate on the federal government's interest in such decisions in its Response to the Motion to Remand.  As the party invoking this Court's jurisdiction, it was Defendant's burden to show it acted under a federal officer for removal purposes.  *See Vaccarino*, 2018 WL 6249707, at *5.  Defendant alleges in its Notice of Removal that it is an MAO that

---

[3] "Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim."  *Sompo Japan Ins. Co. of Am. v. Action Exp., LLC*, 19 F. Supp. 3d 954, 957 (C.D. Cal. 2014) (citation omitted).

contracts with CMS to provide Medicare benefits to patients who choose to receive their Medicare benefits by way of an MA Plan. (Doc. 1 at ¶ 9). Defendant also states that, as an MAO charged with administering the Medicare Part C federal benefits program, it is "highly regulated by CMS (*see* 42 C.F.R. §§ 422.1- 422.2615) and can be subject to CMS sanctions for non-compliance with CMS requirements." (*Id*. at ¶ 10). Defendant alleges that it "assists" a federal officer—CMS—to "fulfill its basic governmental task of administering Medicare benefits under the federal Medicare program" and that, were it not for private MAOs like Defendant, "CMS would have to perform these tasks on its own as it did prior to the adoption of the Medicare Advantage program, and as CMS still does for individuals enrolled in Original Medicare." (*Id*. at ¶ 25). Defendant does not explain in its Notice of Removal how its contract with CMS bears on its coverage decisions, however.

It seems, from the record before the Court, that Defendant is left to carry out its duties on behalf of CMS with minimal intrusion—except for simply complying with the law and CMS regulations. (*See id*.) This is not sufficient to establish that Defendant "acts under" CMS for purposes of removal. *See Watson*, 551 U.S. at 152–53 (stating that acting under a federal officer "does not include simply complying with the law, even if the regulation is highly detailed [or] the private firm's activities are highly supervised and monitored.").

Indeed, courts "must consider the degree of CMS's control over and the federal government's interest in coverage decisions specifically, not administration of MA plans generally." *Vaccarino*, 2018 WL 6249707 at *6. While Defendant has alleged that it is "highly regulated by CMS" and "CMS would have to perform these tasks on its own" if not for MAOs like Defendant, these allegations are allegations of mere legal conclusions— which are inadequate to establish federal jurisdiction. *See Leite*, 749 F.3d at 1121. Even accepting Defendant's allegations in its Notice of Removal as true and drawing all reasonable inferences in its favor, as the Court must, these bald allegations "are not sufficient as a legal matter to invoke the [C]ourt's jurisdiction." *Id*. Because Defendant has not explained the nature of CMS's control over coverage decisions or elaborated on

the government's interest in such decisions, it fails to meet its burden of showing that their actions were "taken pursuant to a federal officer's directions." *See Goncalvez*, 865 F.3d at 1244. Consequently, Defendant has failed to demonstrate that there is a causal nexus between its actions and CMS' directions; therefore, removal is appropriate under Section 1442(a)(1). *See Vaccarino*, 2018 WL 6249707 at *6.

Because the Court finds that Defendant has failed to meet its burden to establish jurisdiction under the "causal nexus" element, it will not address Plaintiff's colorable federal defense argument.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand (Doc. 13) is **GRANTED**. The Clerk of Court is kindly directed to take all steps necessary to remand the remainder of this matter to the Maricopa County Superior Court.

Dated this 1st day of May, 2024.

Honorable Diane J. Humetewa
United States District Judge